FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 12, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES W., | NO: 2:17-CV-247-FVS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 13. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney Dana C. Madsen. Defendant is represented by Special Assistant United States Attorney Jeffrey E. Staples. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is denied and Defendant's Motion, ECF No. 13, is granted.

/ / /

## JURISDICTION

Plaintiff James W.[1] ("Plaintiff") filed for supplemental security income ("SSI") on April 28, 2014, alleging an onset date of September 1, 2007. Tr. 245-48, 274. Benefits were denied initially, Tr. 186-89, and upon reconsideration, Tr. 194-96. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on March 17, 2016. Tr. 41-69. On March 30, 2016, the ALJ denied Plaintiff's claim, Tr. 21-33, and on May 10, 2017, the Appeals Council denied review. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in June 1962, and was 54 years old at the time of the hearing. Tr. 47. He went to school through the tenth grade and later earned a GED. Tr. 47, 51. He also attended some college but did not graduate. Tr. 51. He testified that he has worked at "a lot of different jobs" over the years. Tr. 48. He worked at a hotel, did landscaping, built pallets, served as a caregiver, and his

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

longest job was at a lumber mill.  Tr. 48-50.  His last job was working for Goodwill in 2009.  Tr. 49.

In 2004, Plaintiff had neck surgery.  Tr. 51.  He testified that his pain has gotten worse.  Tr. 51.  He experiences severe pain in his neck, shoulders, and down his arms, and he has limited strength in his arms, particularly his right arm.  Tr. 261.  He gets migraines several times a week and they last for days.  Tr. 54-55.  He has had carpal tunnel surgery in the past which helped for a while, but now his wrist twinges and he has sharp pain in his right hand.  Tr. 52-53.

In February 2015, Plaintiff was assaulted.  Tr. 57.  He had a broken rib which still causes problems.  Tr. 57.  He had counseling for stress, anxiety, and depression.  Tr. 58.  He also has a gastric problem which causes pain.  Tr. 59.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe, or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 28, 2104, the application date. Tr. 24. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disk disease of the cervical spine status post fusion; cognitive disorder; anxiety disorder; somatoform disorder; and personality disorder. Tr. 24. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24. The ALJ then found Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> he has the ability to lift and/or carry 10 pounds occasionally (1/3 of the work day) or 20 frequently (2/3 of the work day); unlimited ability to sit; unlimited ability to stand and/or walk; unlimited ability to push or pull (other than as stated for lift/carry); bilateral overhead reaching limited to frequent; unlimited ability to balance, climb ramps or stairs; frequently stoop (including bending at the waist), crouch (including

bending at the knees) or crawl; but no ladders, ropes or scaffolds; unlimited visual and communicative abilities; unlimited ability to be exposed to wetness, humidity, noise, fumes, odors, dust, gases, and poor ventilation; but should avoid concentrated exposure to extreme cold, extreme heat, vibration, or hazards, such as heights; and should avoid jobs that require constant turning of the neck either left or right. He has the ability to perform simple work-related tasks and some more detailed tasks; remember locations and work-like procedures; remember short and simple instructions; sustain an ordinary routine without special supervision; maintain attendance within a schedule and be punctual within customary tolerances; complete a normal work-day and work-week without interruptions from psychologically based symptoms; would work best with superficial public contact; work best in proximity to, but not close cooperation with co-workers and supervisors; and has the ability to use public transportation, get rides from others, or walk; and would work best in an environment with practical hands on tasks as opposed to use of academic skills.

Tr. 26.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 31. After considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as production assembler, electronics worker, or housekeeping cleaner. Tr. 32. Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since April 28, 2014, the date the application was filed. Tr. 33.

/ / /

/ / /

/ / /

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~8

# ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 12.  Plaintiff raises the following issues for review:

1.    Whether the ALJ improperly discredited Plaintiff's symptom claims; and

2.    Whether the ALJ failed to properly consider the medical opinion evidence.

ECF No. 12 at 9.

# DISCUSSION

## A.    Symptom Claims

Plaintiff contends the ALJ improperly rejected his symptom claims.  ECF No. 12 at 10-13.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. Tr. 27.

First, the ALJ found Plaintiff's activities do not indicate a complete inability to work. Tr. 27. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of the day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ noted Plaintiff lives alone and performs all his own activities of daily living, as well as odd jobs such as shoveling snow, painting, and yard work. Tr. 27, 381, 392, 416-17, 467. Plaintiff reported he helps take care of his mother,

does her yard work, and packed her belongings to move.  Tr. 27, 415, 417, 441.

The ALJ observed that Plaintiff does quite a bit of walking, rides a bike, and

walked 20 minutes to an appointment.  Tr. 27, 392, 393, 403, 484.  The ALJ

reasonably found these activities undermine Plaintiff's allegations regarding

limited physical exertion.  Tr. 27.  Similarly, the ALJ noted Plaintiff alleges

limitations in his hands, but treatment notes in April and May 2014 indicated

Plaintiff denied numbness, tingling, weakness, or pain into his arms and hands.  Tr.

27, 381, 383, 386.

Plaintiff suggests that detail about the "nature and extent" of the activities

mentioned was not adequately explored by the ALJ.  ECF No. 12 at 11.  However,

it was reasonable for the ALJ to conclude that painting, yard work, and packing a

home for a move involve physical exertion inconsistent with Plaintiff's allegations

of a disabling cervical condition.  This is a clear and convincing reason supported

by substantial evidence.

Second, the ALJ found the frequency of mental health treatment received is

not consistent with the mental health problems alleged.  Tr. 28.  Where the

evidence suggests lack of mental health treatment is part of a claimant's mental

health condition, it may be inappropriate to consider a claimant's lack of mental

health treatment as evidence of a lack of credibility.  *See Nguyen v. Chater*, 100

F.3d 1462, 1465 (9th Cir. 1996).  However, when there is no evidence suggesting a

failure to seek treatment is attributable to a mental impairment rather than personal

preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina*, 674 F.3d at 1113-14.

The ALJ noted Plaintiff received very little mental health treatment, which included counseling at Frontier Behavioral Health from January to May and August to November of 2015. Tr. 28, 432-65, 493-98. A counseling note from October 2015 indicates Plaintiff "talked about his health problems the entire session which is what he does." Tr. 28, 496. He was discharged "as he does not need mental health," and Plaintiff agreed. Tr. 28, 496. Plaintiff contends he "had as much counseling as his insurance would cover," citing his testimony that counseling ended because it was a six-month program, and that he had exhausted his insurance benefit. ECF No. 12 at 12 (citing Tr. 57-58). However, the record supports the conclusion that counseling ended because Plaintiff had no mental health problems to work on. The ALJ reasoned that if Plaintiff's mental health issues did not motivate him to seek more treatment, or if he did not actually need treatment, Plaintiff's claims about his symptoms are undermined. Tr. 28. This is a reasonable conclusion based on substantial evidence in the record, and this is a clear and convincing reason.

Third, the ALJ found "the objective medical evidence does not support the level of impairment claimed." Tr. 27. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not

supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2) (2011).[2] Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Plaintiff contends the ALJ's discussion of this factor is impermissibly vague. ECF No. 12 at 10. Defendant does not address the reason, and the Court concludes that while the objective medical evidence is a permissible consideration, the ALJ's general discussion of the objective evidence is insufficient to constitute a clear and convincing reason. General findings are an insufficient basis for a credibility finding. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Notwithstanding, the ALJ gave other legally sufficient reasons for finding Plaintiff's symptom complaints less

---

[2] Some of the regulations cited in this decision were revised effective March 2017. E.g., Revisions to Rules Regarding the Evaluation of Medical Evidence, 18 Fed. Reg. 5882 (January 18, 2017) (revising 20 C.F.R. § 416.929). Since the revisions were not effective at the time of the ALJ's decision, they does not apply to this case. For revised regulations, the version effective at the time of the ALJ's decision is noted.

than fully credible, so any error is harmless. As long as there is substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination, the error is harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

Fourth, the ALJ found Plaintiff was able to work in spite of an impairment which existed before the alleged onset date. Tr. 28. In assessing a claimant's symptom complaints, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ noted Plaintiff's neck impairment existed before the alleged onset of disability in 2007. Tr. 28. Plaintiff underwent cervical spine surgery in 2004, but engaged in substantial gainful activity until 2007. Tr. 48, 260. Without citing any supporting evidence in the record, Plaintiff contends the ALJ did not take into account that the "rigorous labor" Plaintiff did took a toll on his post-surgical condition, suggesting his condition declined as a result of work. ECF No. 14 at 4. Although Plaintiff's argument is not well-supported, it is noted that the ALJ indicated she would "presume an implied case of worsening" after a prior nondisability finding in 2012. Tr. 21-22. Because of the ALJ's finding that there is an implied case of worsening after 2012, this is not a clear and convincing reason supported by substantial evidence. Notwithstanding, the ALJ cited other legally sufficient reasons for

finding Plaintiff's symptoms complaints unpersuasive, and any error is harmless. *See Carmickle*, 533 F.3d at 1162.

Lastly, Plaintiff contends that because the ALJ did not specifically discredit Plaintiff's allegations of headaches and fatigue, "[t]hese symptoms should therefore be credited and included as severe impairments." ECF No. 12 at 12-13. At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To show a severe impairment, the claimant must first prove the existence of medically determinable physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908 (1991).

First, it is noted that fatigue is a subjective symptom and is not itself an impairment. *See* 20 C.F.R. § 416.929(b) (2011) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."). With regard to headaches, the ALJ found that migraine headaches are not a severe impairment as they cause minimal limitations in Plaintiff's ability to perform work activity. Tr. 24. Plaintiff cites his own complaints about headaches, but identifies no evidence indicating they cause functional limitations. ECF No. 12 at 12-13 (citing Tr. 321,

373, 401-02, 478, 500).  Based on the foregoing, the ALJ's consideration of Plaintiff's allegations of fatigue and headaches was adequate.

**B.    Medical Opinion Evidence**

Plaintiff contends the ALJ improperly rejected the medical opinions of W. Scott Mabee, Ph.D., an examining psychologist; John Arnold, Ph.D., an examining psychologist; Robert R. Cornell, M.S., C.V.E., a vocational specialist; and John Craw, M.D., a treating physician.  ECF No. 12 at 13-19.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan*, 246 F.3d at 1201-02 (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31 (9th Cir. 1995)).

     *1.    W. Scott Mabee, Ph.D.*

     Dr. Mabee completed a DSHS Psychological/Psychiatric Evaluation form in January 2014. Tr. 467-71. He diagnosed pain disorder associated with both general medical condition and psychological factors; dysthymia; and personality disorder not otherwise specified with histrionic and passivity features. Tr. 468. Dr. Mabee assessed marked limitations, defined as "very significant limitation on the ability to perform one or more basic work activity," in two functional areas: (1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and (2) the ability to complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 469. In addition, Dr. Mabee assessed moderate limitations in five functional areas. Tr. 469. The ALJ gave little weight to Dr. Mabee's assessment. Tr. 29.

Because Dr. Mabee's opinion was contradicted by the opinion of Dr. Bostwick, Tr. 414-21, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Mabee's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Mabee's opinion is not consistent with evidence that Plaintiff had few mental complaints. Tr. 29. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Plaintiff points to counseling records indicating complaints of anxiety, stress, depression, low self-esteem, and poor motivation and concentration. ECF No. 12 at 14 (citing Tr. 415, 419, 441, 453, 455, 457, 459, 461, 442, 446-49, 451). However, the counselor who heard these complaints found he is a "we[ll] adjusted guy and gets along with people so well." Tr. 27, 459. As noted *supra*, Plaintiff's counselor discharged him from services because he did not need them, and he agreed. Tr. 496. Plaintiff also complained of depression, anxiety, and stress to Dr. Bostwick, who found no signs or symptoms of depressive disorder and only a few mild limitations associated with stress and anxiety. Tr. 29, 415, 420. Notably, Dr. Mabee did not document any specific mental health complaints. Tr. 467-68. The ALJ's finding is based on a reasonable interpretation of the record, and this is a specific, legitimate reason supported by substantial evidence.

Second, the ALJ found Dr. Mabee's opinion is internally inconsistent because Dr. Mabee found Plaintiff's mental health status was almost normal. Tr. 29. An ALJ may reject opinions that are internally inconsistent. *Nguyen*, 100 F.3d at 1464. An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data or contradicted by the opinions of other examining medical sources. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ found that Dr. Mabee's assessment of marked and moderate limitations is inconsistent with his mental status exam findings which are largely normal. Tr. 29. Indeed, Plaintiff's mental status was within normal limits with regard to thought process and content, orientation, perception, memory, and fund of knowledge. Tr. 470. Abstract thought had both normal and abnormal findings, but Dr. Mabee concluded Plaintiff's functioning in that area is low average to average. Tr. 470. Dr. Mabee found Plaintiff's insight is reasonable, but judgment is marginal. Tr. 471. Although Dr. Mabee indicated Plaintiff's concentration was not within normal limits because he was not able to perform backward serial counting by sevens from 100, the other measures of concentration on the mental status exam were noted to be within normal limits. Tr. 470. Thus, the ALJ reasonably determined that a few partially abnormal mental status exam findings are not consistent with Dr. Mabee's assessment of marked limitation in the abilities to perform activities within a schedule, maintain regular attendance, and be punctual, and in the ability to complete a normal work day and work week. Tr. 29.

Plaintiff notes, "Dr. Mabee remarked on [Plaintiff's] atypical speech, mood and affect," and contends the ALJ's conclusions regarding Dr. Mabee's report is erroneous. ECF No. 12 at 14. However, Dr. Mabee observed only that Plaintiff's speech is "generally adequate," Plaintiff reported he was "stressed," and his affect was "edgy." Tr. 470. The ALJ reasonably found these observations in the mental status exam do not support the marked and moderate limitations assessed. Tr. 29. This is a specific, legitimate reason supported by substantial evidence.

The ALJ also gave four additional reasons for generally disregarding DSHS psychological evaluations: (1) they are largely based on the claimant's self-report; (2); they were conducted for the purpose of determining the claimant's eligibility for state assistance which give the claimant an incentive to overstate his symptoms; (3) they were made on a check-box form with few objective findings; and (4) the definitions of limitations on the DSHS form differ from the definitions in the Social Security regulations. Tr. 30. Defendant concedes the ALJ's discussion of these reasons did not pertain to the opinions of Dr. Mabee or Dr. Arnold (discussed *infra*), so they are not specific, legitimate reasons for rejecting either opinion. ECF No. 13 at 8. However, because the ALJ gave other legally sufficient reasons for giving little weight to Dr. Mabee's opinion, to the extent the ALJ erred in considering DSHS opinions generally, any error is harmless. *See e.g., Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

### 2. *John Arnold, Ph.D.*

Dr. Arnold completed a DSHS Psychological/Psychiatric Evaluation form in December 2015. Tr. 500-04. He diagnosed cannabis use disorder (severe) in self-reported early full remission; persistent depressive disorder, late onset; and unspecified anxiety disorder. Tr. 501. Dr. Arnold also noted rule out somatic symptom disorder, rule out borderline personality disorder, and rule out borderline intellectual functioning. Tr. 501. Dr. Arnold assessed a severe limitation, or "inability to perform," in the ability to adapt to changes in a routine work setting, four marked limitations, and seven moderate limitations. Tr. 502. The ALJ gave little weight to Dr. Arnold's opinion. Tr. 29-30.

The ALJ gave little weight to Dr. Arnold's opinion because it is inconsistent with evidence that Plaintiff is independent with his activities of daily living and is living fine on his own. Tr. 30. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02. As discussed *supra*, the ALJ Plaintiff lives by himself and performs all activities of daily living. Tr. 27, 392, 416-17, 467. Indeed, Dr. Arnold noted Plaintiff had been living in his own apartment for the past five years. Tr. 501. Plaintiff's only complaints about daily living were that "it's hard to get going before noon" and he needed to get help with cleaning due to his physical problems. Tr. 501. The ALJ reasonably determined Plaintiff's ability to live independently is inconsistent with marked and severe limitations assessed by Dr. Arnold.

Plaintiff' contends the ALJ "does not explain how the work-related limitations Dr. Arnold found correlate to [Plaintiff's] daily activities nor is there any apparent relationship." ECF No. 12 at 16. Dr. Arnold opined Plaintiff has a marked limitation in the ability to adapt to changes in a work setting, meaning Plaintiff is unable to adapt to changes. Tr. 502. However, on their face, independent living and travel by public transportation require a level of adaptability, which contradicts Dr. Arnold's assessment. Another example of inconsistency is that Dr. Arnold assessed a moderate limitation in the ability to be aware of normal hazards and take appropriate precautions, yet Plaintiff's long-term ability to live on his own and navigate public transportation is plainly counter to that limitation. While the ALJ did not specifically note those obvious contradictions, the Court may make inferences from the ALJ's discussion of the evidence, if the inferences are there to be drawn. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The ALJ could perhaps have explained this finding in more detail, but the Court concludes this does not rise to the level of error, and this is a specific, legitimate reason supported by substantial evidence for giving little weight to Dr. Arnold's opinion.

### 3. *Robert R. Cornell, M.S., C.V.E.*

In March 2016, Mr. Cornell, a certified vocational evaluator, examined Plaintiff and prepared a Vocational Evaluation Report regarding Plaintiff's level of dexterity and manual manipulation. Tr. 318-22. According to Mr. Cornell,

psychometric testing indicated below average performance for dexterity and manual manipulation. Tr. 321. Mr. Cornell noted pain and cramping of Plaintiff's right thumb, tiredness, tightness and pain in Plaintiff's right shoulder, and cervical tightness. Tr. 322. Mr. Cornell opined that Plaintiff will have difficulty functioning in jobs requiring the use of the upper extremities for reaching, handling, and fingering activities. Tr. 322. Mr. Cornell also found that Plaintiff is unable to return to past work, and that he is not gainfully employable in unskilled or semiskilled jobs in the national labor market. Tr. 322. The ALJ gave Mr. Cornell's opinion little weight. Tr. 30.

The opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than that of an "other source." 20 C.F.R. § 416.927 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 416.913(d) (2013). Notwithstanding, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen*, 100 F.3d at 1467. Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

As a vocational evaluator, Mr. Cornell is a non-medical "other source" under the regulations. 20 C.F.R. § 416.913(d) (2013). Thus, the ALJ was required to cite germane reasons for rejecting the opinion. *See Dodrill*, 12 F.3d at 919.

First, the ALJ found Mr. Cornell's evaluation was done for a specific area of functioning and is not an indication of Plaintiff's overall work functioning. Tr. 30. The ALJ is correct that Mr. Cornell conducted testing for dexterity and manual manipulation and did not independently assess his other impairments. Tr. 321-22. However, the regulations require an ALJ consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 416.913(e)(2) (2013). Even though Mr. Cornell's opinion may not address every area of functioning, it could potentially support findings regarding Plaintiff's functioning in one or more areas, which could impact his ability to work. Under the ALJ's reasoning, the opinions of some medical specialists would be rejected for failure to address every area of functioning, yet specialists often provide valuable insight into a specific condition. Thus, this is not a legally sufficient reason to reject Mr. Cornell's opinion. Notwithstanding, the ALJ provided other germane reasons for giving little weight to Mr. Cornell's opinion, so this error is "inconsequential to the ultimate nondisability determination in the context of the record as a whole," and was therefore harmless. *E.g., Molina,* 674 F.3d at 1122 (internal quotation marks omitted).

Second, the ALJ found Mr. Cornell was not qualified to assess Plaintiff's level of physical and mental impairment. Tr. 30. As noted *supra*, the ALJ is required to consider the observations of non-medical sources as to how an impairment affects claimant's ability to work. *Sprague,* 812 F.3d at 1232. Mr. Cornell's status as a certified vocational evaluator is therefore not a sufficient basis for the ALJ to reject his opinion However, the ALJ may ascribe less weight to the opinion of a non-medical source than that of a medical source. 20 C.F.R. § 416.927 (2012). Here, other acceptable medical sources opined that Plaintiff had no hand or dexterity limitations (Dr. Weir, Tr.395; Dr. Jahnke, Tr.45). Thus, the ALJ was entitled to ascribe less weight to a conflicting non-medical source opinion that Plaintiff has disabling hand and dexterity limitations. Tr. 322 This is therefore a germane reason supported by substantial evidence.

Third, the ALJ found there is little evidence to support manual dexterity limitations. Tr. 30. Inconsistency with medical evidence is a germane reason for rejecting lay witness evidence. *Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Plaintiff contends the ALJ failed to consider an August 2013 nerve conduction study. ECF No. 12 at 18. That study was "suggestive although nondiagnostic for Right carpal tunnel syndrome" and "nondiagnostic for, although suggests the possibility of an evolving ulnar nerve entrapment." Tr. 375. However, notwithstanding, the ALJ noted that in April 2014, Plaintiff specifically denied

numbness, tingling, weakness, or pain in the hands and fingers.  Tr. 30, 381.

Plaintiff asserts that, "in light of his symptoms, [he] was not using his hands to any

degree of measure" at the time he denied hand symptoms.  ECF No. 12 at 18.  This

argument is without basis in the record.  Plaintiff also notes the April 2014 record

indicates he endorsed loss of dexterity and strength in his upper extremities.  ECF

No. 12 at 18.  However, it is clear from the record that this complaint pertained to

"the upper arm over the lateral aspect especially on the left side but bilaterally,"

and not to his hands or wrists.  Tr. 381.

Additionally, in June 2014, Peter Weir, M.D., an examining physician, noted

an unremarkable physical exam and opined Plaintiff has no functional limitations.

Tr. 29, 395.  The medical expert, Lynne Jahnke, M.D., reviewed the entire record

and testified that although Plaintiff previously had carpal tunnel syndrome in his

right wrist, it was improved with a carpal tunnel release in 2010.  Tr. 28, 45.  Dr.

Jahnke considered the August 2013 nerve conduction study, found it much

improved from a 2010 study, noted no other complaints about hand or wrist pain,

and concluded there are no ongoing issues in Plaintiff's hands and wrists.  Tr. 28,

45.  Based on the foregoing, the ALJ's determination that there is little evidence to

support dexterity limitations is supported by substantial evidence, and this is

germane reason for rejecting Mr. Cornell's opinion.

/ / /

/ / /

### 4. John Craw, M.D.

Plaintiff asks the Court to consider records from Dr. Craw which were first submitted to the Appeals Council and were not part of the record before the ALJ. ECF No. 12 at 18-19. The Appeals Council found that evidence from OSC Premier Bone and Joint Surgeons dated March 22, 2016, which is Dr. Craw's office visit note from that date, "does not show a reasonable probability that it would change the outcome of the decision." Tr. 2. The Appeals Council therefore did not consider the evidence and did not include it as an exhibit in the record. Tr. 2. Plaintiff attached the five-page record from Dr. Craw to his summary judgment brief. ECF No. 12-1 at 1-5.

When the Appeals Council "declines review, 'the ALJ's decision becomes the final decision of the Commissioner,' and the district court reviews that decision for substantial evidence, based on the record as a whole." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (citation omitted). The "record as a whole" includes any new evidence made part of the record by the Appeals Council, and "the district court must consider [that new evidence] when reviewing the Commissioner's final decision for substantial evidence." *Id.* at 1163. Here, the Appeals Council specifically declined to make the new evidence part of the record. Tr. 2. As such, Dr. Craw's notes are not before the Court for review as part of the administrative record.

When new evidence which is not part of the record is submitted for the first time to the Court, remand may be appropriate under "sentence six" of 42 U.S.C. § 405(g). Sentence six provides, "[t]he Court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Thus, remand for review of records submitted to the Court is appropriate only if (1) the new evidence is "material" and (2) there was "good cause" for the failure to incorporate such evidence into the record in prior administrative proceedings.

However, the Court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief. *See Carmickle*, 533 F.3d at 1161 n.2. The Ninth Circuit "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant.'" *Independent Towers v. Washington,* 350 F.3d 925, 929 (9th Cir.2003) (quoting *Greenwood v. Fed. Aviation Admin.,* 28 F.3d 971, 977 (9th Cir.1994)). Rather, the Court will "review only issues with are argued specifically and distinctly." *Independent Towers*, 350 F.3d at 929. As Defendant observes, Plaintiff has not requested relief under sentence six, so the issue is not properly before the Court. ECF No. 13 at 11.

Additionally, even if a request for relief under sentence six could be inferred, Plaintiff's scant briefing of the issue makes no showing of materiality or good cause. ECF No. 12 at 6, 18-19. For the new evidence to be material,

Plaintiff must show the matter bears directly on the dispute and that there is a "reasonable possibility" that the new evidence would change the outcome of the hearing. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). Plaintiff's sole assertion is that the evidence from Dr. Shaw "shows that the ALJ's decision regarding [Plaintiff's] physical impairments are not based on substantial evidence." ECF No. 12 at 18. This is insufficient to establish a reasonable possibility that the evidence would change the outcome of the case. For a good cause showing, Plaintiff must establish that the new evidence was not available earlier. *Id.* at 463 (citing *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)). Dr. Craw's notes are dated before the date of the ALJ's decision,[3] yet Plaintiff offered no explanation for not submitting the notes to the ALJ. Based on all of the foregoing, the Court declines to remand on the basis of the evidence from Dr. Craw.

## CONCLUSION

After reviewing the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

_____

[3] It is noted that Dr. Craw's office visit note is dated March 22, 2016, and the ALJ's decision is dated March 30, 2016, so perhaps the note did not become available to Plaintiff until after the ALJ's decision. Nonetheless, the Court declines to speculate as it is Plaintiff's duty to assert the appropriate basis for the Court's review, which has not been established here.

The ALJ's interpretation of the evidence was reasonable and supported by substantial evidence in the record. Therefore, the ALJ's decision is affirmed.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** October 12, 2018.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge